UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Brenda Bloomfield,                                    Case No. 3:12-cv-00870

        Plaintiff

   v.                                                    MEMORANDUM OPINION
                                                                        AND ORDER

Whirlpool Corporation,

        Defendant


## INTRODUCTION

Before me are the cross-motions of Defendant Whirlpool Corp., for summary judgment, (Doc. No. 23), and Plaintiff Brenda Bloomfield, (Doc. No. 27), for partial summary judgment. Both parties have filed briefs in opposition and in reply. For the following reasons, Whirlpool's motion is granted in part and denied in part and Bloomfield's motion is denied.

## BACKGROUND

Bloomfield began working at the Whirlpool factory in Findlay, Ohio in August 2001 as a temporary employee; she became a full-time employee following a 90–day probationary period. In September 2009, Bloomfield began having a dispute with a coworker named Dawn Bower. The two engaged in several verbal confrontations, and each accused the other of harassment. Bower subsequently reported the conflict to Whirlpool's human resources department. Cindy Osting, the plant's Human Resources Manager, interviewed other employees who worked on the assembly line with Bower and Bloomfield and also spoke with the two women. Osting instructed Bloomfield and

Bower to communicate only for work-related purposes and to bring any future disagreements to the line supervisor or to Osting.

Several days later, Osting began investigating additional complaints Bloomfield and Bower each made against the other person. Osting gave Bower a verbal warning for using profanity toward Bloomfield and gave Bloomfield a written warning for making inappropriate comments concerning Bower and another employee, Nick Van Sky. Osting also concluded Bloomfield had not been truthful during the investigation and suspended her without pay for two days. (Doc. No. 25-13 at 3). Bloomfield then quoted a verse from the Bible to Osting[1] and told Osting, who was pregnant at the time, she was praying for Osting and her child. Osting believed Bloomfield was threatening her. (Doc. No. 31 at 62). Bloomfield asserts she did not make either statement with ill intentions. Several days later, Bloomfield again began discussing religion with Osting, who asked her to stop and stated she would not discuss religion with Bloomfield. (Doc. No. 25-13 at 3).

Shortly before Christmas in 2009, Bloomfield and her daughter saw Bower and Bower's husband at Wal-Mart. Bloomfield claims Bower told Bloomfield's daughter "I'm sorry that God gave you a mother like that," and threatened to assault Bloomfield when Bloomfield told Bower she would pray for her. (Doc. No. 39 at 180). Bloomfield filed a petition in the Wyandot County, Ohio, Court of Common Pleas, seeking a civil stalking protection order against Bower. (Doc. No. 25-2 at 9-15). The court issued a temporary restraining order, but subsequently denied Bloomfield's request for a protection order. (Id. at 16-22).

On January 19, 2010, Bloomfield requested and received permission to take a medical leave of absence. (Doc. No. 39 at 208, 211). During her leave of absence, Bloomfield was treated by Dr. Brad Bundy, a psychiatrist. Bloomfield also filed an EEOC charge on March 22, 2010, alleging sex

---

[1] The verse was Romans 12:19: "Dearly beloved, avenge not yourselves, but rather give place unto wrath: for it is written, Vengeance is mine; I will repay, saith the Lord." King James Version; (see Doc. No. 39 at 154-56). Osting states Bloomfield quoted another verse as well, but could not recall it. (Doc. No. 25-13 at 3).

2

and religious discrimination as well as retaliation, though she did not ultimately pursue litigation in relation to that EEOC Charge. (Doc. No. 28-1).

On April 17, 2010, Bloomfield saw Osting at an Olive Garden restaurant in Findlay, Ohio. Both sides agree Bloomfield made a comment to Osting as she passed by, though they disagree over the exact wording. Osting states Bloomfield said to her "Yours is coming Cindy," while Bloomfield testified she told Osting "It's coming, Cindy." (Doc. No. 25-13 at 2; Doc. No. 39 at 222). Osting felt Bloomfield was threatening her, while Bloomfield states she merely was referring to the EEOC charge she had filed a few weeks earlier. (Doc. No. 31 at 58; Doc. No. 39 at 222). Osting reported the interaction to Corri Wilcox, the Human Resources Director at Whirlpool's Findlay location. (Doc. No. 31 at 63).

On July 13, 2010, Bloomfield obtained a note from Dr. Bundy clearing her to return to work from her medical leave on July 21, 2010.[2] (Doc. No. 25-2 at 25). When employees return to work following medical leaves of absence, Whirlpool requires them to undergo drug screening and a return-to-work evaluation with a contract physician. In this instance, Whirlpool also requested that the contract physician, Dr. Scott Leslie, refer Bloomfield for an psychiatric evaluation. (Doc. No. 25-9 at 3). Dr. Leslie referred Bloomfield to a psychiatrist, Dr. Charles Burke, for an independent medical examination ("IME"). (Doc. No. 25-7 at 3). Though Bloomfield believed Whirlpool sought the IME as retaliation for her EEOC charge, she attended the appointment with Dr. Burke. (Doc. No. 39 at 250, 255). At the end of the appointment, Bloomfield removed a tape recorder from her purse. (Id. at 258-59). Dr. Burke told Bloomfield she could not record the session and stated he would erase the tape. Bloomfield refused to permit Dr. Burke to erase the tape and left his office without signing a release form authorizing Dr. Burke to send information on the IME to Dr. Leslie and Whirlpool. (Doc. No. 28-6 at 3).

---

[2] On July 20, 2010, Dr. Bundy sent Whirlpool a second note clearing Bloomfield to "return to work without any restrictions . . . ." (Doc. No. 28-4 at 2).

3

Dr. Burke informed Whirlpool of what transpired and told Dr. Leslie and Whirlpool "[i]n [his] opinion, this demonstrates non-cooperation with the psychiatric evaluation and [he] would recommend that you follow whatever appropriate administrative action you deem necessary." (Id.). Kevin Traxler, a Human Resources Generalist, informed Bloomfield that Whirlpool did not receive documentation from Dr. Burke's IME supporting her ability to return to work and that "[f]ailure to cooperate with the exam is considered insubordinate conduct" under the terms of the employee handbook. (Doc. No. 28-7 at 2). Bloomfield was terminated on August 2, 2010, for failing to produce documentation from the IME supporting her ability to return to work and "continued inappropriate behavior." (Id.).

Bloomfield filed an EEOC charge following her termination and received a right-to-sue letter from the EEOC on January 20, 2012. Bloomfield timely filed suit against Whirlpool on April 11, 2012, stating claims for disability discrimination in violation of federal and state law, sex discrimination, religious discrimination, and retaliation in violation of Title VII.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the nonmoving party bears the ultimate burden of proof at trial, the movant is entitled to summary judgment if the movant shows that the nonmoving party failed to present evidence "to support an essential element of his or her claim." *Celotex Corp v. Catrett,* 477 U.S. 317, 322-23 (1986).

If the movant satisfies this burden, the nonmoving party "must present specific facts setting forth a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The nonmoving party needs only to present evidence from which a reasonable jury could find in that party's favor. *Id.* at 251. "All of [that] evidence and any inferences that may be drawn from that evidence [must be viewed in a] . . . light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The nonmoving party, however, must "do

4

more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87.  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson,* 477 U.S. at 247-48.

The party opposing the motion "must show she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir. 2009) (emphasis in original).  Summary judgment shall be awarded "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317.

## ANALYSIS

### I.  DISABILITY DISCRIMINATION

Bloomfield asserts Whirlpool discriminated against her on the basis of her disability in violation of state and federal law.  The Supreme Court of Ohio consistently has held courts considering disability discrimination claims pursuant to O.R.C. § 4112.02 may look to case law and regulations interpreting the Americans with Disabilities Act ("ADA") for guidance.  *See, e.g., Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998).  The parties have not identified any relevant differences between Ohio case law and federal case law and my analysis of Bloomfield's claim under the ADA will apply equally to her claim under O.R.C. § 4112.02.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938-39 (6th Cir. 2000).

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to . . . discharge . . . and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a).  An individual has a disability if that person has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.  42 U.S.C. § 12102(1).  In order to recover under the ADA, Bloomfield must establish she has a disability, she otherwise is qualified to perform

5

her job duties, and she was terminated on the basis of her disability. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004) (*quoting Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012) (en banc)). She may prove her termination violated the ADA through direct or indirect evidence. *Hedrick*, 355 F.3d at 452.

1. **DIRECT EVIDENCE**

Direct evidence is evidence which would require the finder of fact to conclude the challenged employment action was the result of discrimination. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008); *Lewis*, 681 F.3d at 321 (the ADA "prohibit[s] discrimination that is a 'but-for' cause of the employer's adverse decision") (internal quotation and citation omitted). "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated . . . by prejudice against members of the protected group." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). Bloomfield presents the following arguments in support of her assertion there is direct evidence of disability discrimination: (1) Sue Dye, a Human Resources Generalist for Whirlpool, withheld her job until Bloomfield submitted to the IME; (2) Whirlpool terminated Bloomfield for "purportedly failing to complete the IME"; (3) "[b]ut for [Bloomfield's] medical condition, she would not have been ordered to submit to an IME"; and (4) "[i]t follows" Bloomfield would not have been terminated if not for her disability. (Doc. No. 28 at 7-8).

On their face, Bloomfield's arguments and evidence do not meet the direct evidence standard because they require that the factfinder draw an inference of discrimination from the circumstances surrounding Bloomfield's termination. Moreover, Bloomfield acknowledges that Whirlpool identified her conduct during the IME as the basis for her termination, and did not specifically rely on her disability. The evidence Bloomfield identifies could not require a juror to

6

conclude Whirlpool discriminated against her; it is circumstantial and properly analyzed under the *McDonnell Douglas* framework.

   2. **INDIRECT EVIDENCE**

      A. **PRIMA FACIE CASE**

To prove her claims using indirect evidence, Bloomfield first must establish a prima facie case of disability discrimination. *Shoemaker v. E.I. DuPont de Nemours and Co.*, 405 F. App'x 16, 18 (6th Cir. 2010) (*citing Monette*, 90 F.3d at 1186); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Bloomfield may establish her prima facie case by establishing the following: (1) she is an individual with a disability; (2) she otherwise is qualified to perform her job duties, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) Whirlpool knew or had reason to know of her disability; and (5) she was replaced or her position remained open. *Plant*, 212 F.3d at 936. If she does so, the burden shifts to Whirlpool to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Shoemaker*, 405 F. App'x at 18. The burden then returns to Bloomfield to establish that Whirlpool's proffered reason merely is a pretext for unlawful discrimination. *Id.*

Whirlpool acknowledges Bloomfield's termination satisfies the adverse-employment-action prong. While the parties dispute whether Whirlpool regarded Bloomfield as disabled, Bloomfield testified Dr. Bundy diagnosed her with depression and anxiety disorder shortly after she took short-term disability leave from Whirlpool in January 2010. (Doc. No. 39 at 291). She further testified her anxiety affected her ability to sleep, concentrate, and think. (Id. at 295). Under the ADA, Bloomfield has a mental impairment that substantially limits one or more major life activities and has produced evidence to establish this element of her prima facie case. 42 U.S.C. § 12102(1)-(2)(A).

It is somewhat more difficult to determine whether Whirlpool knew or had reason to know of Bloomfield's disability. Whirlpool granted Bloomfield's request for a medical leave of absence, knew she "was treating with Dr. Bundy [and] . . . what type of things he treated for," and knew,

7

before instructing Bloomfield to attend the IME, that she was "about to exhaust her [short-term disability leave]." (Doc. No. 25 at 54; Doc. No. 25-9 at 3). Dye, who requested that Dr. Leslie refer Bloomfield for the IME, "assum[ed]" Bloomfield may have had a mental health condition that might interfere with her ability to return to work. (Doc. No. 25 at 55). Additionally, Dr. Leslie's notes from his July 20 visit with Bloomfield states Dr. Bundy was treating Bloomfield for depression and anxiety. (Doc. No. 28-3 at 2). These notes were placed in Bloomfield's employee file and were accessible to employees in Whirlpool's human resources department, including Dye. (Doc. No. 25 at 52-54). Taken together and viewed in a light most favorable to the plaintiff, I conclude this evidence is sufficient to permit a reasonable juror to draw the inference that Whirlpool had notice of Bloomfield's disability.

Whirlpool argues Bloomfield cannot show she otherwise was qualified for her position "given her threatening conduct towards Whirlpool employees . . . [and] Bloomfield's refusal to cooperate during the IME caused her termination, not any disability she may have had." (Doc. No. 24 at 19). Whirlpool's argument is not persuasive. While Bloomfield's statements and conduct indisputably influenced Whirlpool's decision to require Bloomfield to submit to an IME before returning to work, there is no evidence Whirlpool believed her statements and conduct were independently sufficient to warrant terminating her. As Bloomfield notes, there is no evidence she had any other physical or mental issues that would have prevented her from complying with her job responsibilities.

Further, *Sullivan v. River Valley School Dist.*, 197 F.3d 804 (6th Cir. 1999), does not compel the conclusion that Bloomfield was not qualified for her job. In *Sullivan*, the plaintiff was a school teacher who "supposedly . . . threatened school board members . . . [following] an unfavorable hearing regarding his payment of union representation fees . . . ." *Id.* at 809. Sullivan told the school board president, "You'll be sorry for this," and another board member, "You will regret this." *Id.* The Sixth Circuit affirmed the district court's conclusion that Sullivan was not otherwise qualified

8

for his position and noted that, on appeal as before the district court, "Sullivan [did] not dispute the evidence that he threatened members of the school board as alleged." *Id.* at 813.

The circumstances in this case are very different. Bloomfield adamantly disputes Whirlpool's characterization of her comments and denies she threatened any Whirlpool employee. (Doc. No. 39 at 161-62, 222-24). Moreover, the words Bloomfield used – measured either by her recollection or Osting's – do not state an unambiguous threat. A reasonable juror could conclude Bloomfield's comments were not threats.

Finally, Bloomfield's alleged noncooperation with the IME is not evidence she was not otherwise qualified for her position; rather it is Whirlpool's proffered nondiscriminatory reason for terminating Bloomfield. Bloomfield has presented sufficient evidence to establish her prima facie case.

### B. PRETEXT

Whirlpool asserts Bloomfield was terminated not because of her disability, but because she did not cooperate with Dr. Burke's evaluation, and therefore was insubordinate. (Doc. No. 24 at 19). As Whirlpool notes, the Sixth Circuit "has upheld requiring mental and physical exams as a precondition to returning to work . . . [and] also upheld a finding of insubordination for refusing to submit to such exams." *Sullivan*, 197 F.3d at 812 (*citing Pesterfield v. TVA*, 941 F.2d 437 (6th Cir. 1991) and *Moore v. Bd. of Educ.*, 134 F.3d 781 (6th Cir. 1998)).

Bloomfield now "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) (overruled on other grounds by *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)). Bloomfield may show Whirlpool's explanation is pretext for discrimination by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was insufficient to motivate its decision. *Manzer*, 29 F.3d at 1084. Bloomfield argues Whirlpool's proffered nondiscriminatory reason is pretextual because she did not refuse to cooperate with the

9

IME and it was unlawful for Whirlpool to require her to submit to the IME. (Doc. No. 28 at 11). Bloomfield asserts the entire basis for Whirlpool's noncooperation claim is her refusal to permit Dr. Burke to erase her recording of the IME. She also asserts the IME was "discriminatory and retaliatory" and that Whirlpool cannot demonstrate the IME was permissible under the ADA. (Doc. No. 41 at 16). I will address Bloomfield's latter contention first.[3]

The ADA prohibits employers from requiring an employee to undergo a medical examination, or to make inquiries as to whether the employee has a disability as well as regarding the nature or severity of the disability, "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). The ADA balances the prohibition of discrimination against an employee on the basis of disability with the protection of other employees from "significant health and safety risks" that employee might pose. *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998) (*citing School Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 287 (1987)). Thus, the ADA "allows employers to require as a qualification for employment that the disabled individual . . . not pose a 'direct threat to the health or safety of other individuals in the workplace.'" *E.E.O.C. v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1095 (6th Cir. 1998) (*quoting* 42 U.S.C. § 12113(b)). A "direct threat" is a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3).

In order to prove an employee poses a direct threat under the ADA, the employer must prove there has been "an individual assessment of the [employee's] present ability to safely perform the essential functions of the job." *Prevo's Family Mkt.*, 135 F.3d at 1095 (*quoting* 29 C.F.R. § 1630.02(r)). "This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." *Id.*

---

[3] Generally, courts undertake an analysis of the ADA's direct threat standard in considering the "otherwise qualified" prong of the plaintiff's prima facie case. *See, e.g., Mauro v. Borgess Med. Ctr.*, 137 F.3d 398, 402-03 (6th Cir. 1998) (*citing School Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273 (1987)). In this case, however, Dr. Burke's evaluation does not support a finding that Bloomfield posed a direct threat and therefore was not otherwise qualified. I discuss the direct threat statutory provision and case law in evaluating Bloomfield's pretext arguments because, in part, she challenges the legitimacy of the IME and argues it therefore is evidence of pretext.

Bloomfield argues "all of the objective medical evidence" demonstrates she did not pose a direct threat because Dr. Bundy cleared her to return to work and Dr. Burke did not conclude she posed a danger to herself or others. (Doc. No. 28 at 10). This does not mean, however, that the IME was unlawful. The ADA permits an employer to require an employee to undergo a medical evaluation if the employer has a reasonable concern that the employee poses a direct threat. In most cases, the employer is <u>not</u> permitted to conclude on its own that the employee poses a direct threat; the employer must have "a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." 29 C.F.R. § 1630.2(r). Dr. Leslie referred Bloomfield to Dr. Burke even after Dr. Bundy cleared Bloomfield to return to work because Dr. Leslie was concerned Dr. Bundy did not have complete information on which to base his recommendation. Bloomfield's claim that the IME was unlawful is not supported by case law and does not prove Whirlpool's proffered nondiscriminatory reason is pretextual.

Bloomfield's first contention – that Whirlpool's proffered reason is pretextual because she in fact cooperated with the IME – is more successful. Dr. Burke's letter to Whirlpool stated (1) Bloomfield recorded the session without his permission, (2) refused to permit him to erase the tape, and (3) did not sign a release form that would permit Dr. Burke to transmit information to Dr. Leslie and Whirlpool. (Doc. No. 28-6 at 3). Dr. Burke concluded "this demonstrates non-cooperation with the psychiatric evaluation . . . ." (Id.).

The Sixth Circuit has adopted and applied the "honest belief rule" at the pretext stage of discrimination claims. *See, e.g., Smith v. Chrysler Corp.*, 155 F.3d 799, 806-08 (6th Cir. 1998). Under the honest belief rule,

> in order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made. If the employer is unable to produce such evidence to support its employment action, then the "honest belief" rule does not apply. Even if the employer is able to make such a showing, the protection afforded by the rule is not automatic.

11


*Id.* at 807.  The "key inquiry" under the honest belief rule is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.*

Whirlpool claims "[t]here is no evidence that Whirlpool did not honestly believe, based upon the information it had at the time that the decision was made, that Bloomfield had been uncooperative during the IME, and that her conduct amounted to insubordination."  (Doc. No. 24 at 19-20).  It is not sufficient, however, for Whirlpool to honestly believe the information before it, particularly when the information before it was clearly incomplete.  The particularized facts before Whirlpool presented a straightforward, possible solution: asking Dr. Burke if Bloomfield could return to his office and sign the release form.[4]  While the honest belief rule does not require the employer's decision-making process leave "no stone unturned," *Smith*, 155 F.3d at 807, Whirlpool has not established that its reliance on incomplete facts was reasonable.

The presence of a genuine dispute of material fact on this issue also defeats Bloomfield's motion for summary judgment.  Even though a reasonable juror could conclude Whirlpool's proffered reason for terminating Whirlpool was pretextual, there remains a genuine dispute as to whether Whirlpool's proffered reason was pretext for discrimination, and thus neither party is entitled to summary judgment on Bloomfield's disability discrimination claims.

## II.    SEX DISCRIMINATION

Whirlpool moves for summary judgment on Bloomfield's claim that Whirlpool discriminated against and harassed her on the basis of her sex in violation of Ohio law, arguing there is no evidence to support Bloomfield's allegation.  Bloomfield expressly abandoned this claim in her brief in opposition to Whirlpool's motion.  (Doc. No. 38 at p. 22 n.21).  Accordingly, Whirlpool is entitled to summary judgment on Bloomfield's sex discrimination claim.  *See Liberty Lobby, Inc.*, 477 U.S. at 256-57 (noting Rule 56 requires a party to produce affirmative evidence to defeat a properly

---

[4]  Dr. Burke testified during his deposition that he believed Bloomfield had not been honest during the evaluation. (Doc. No. 36 at 39-40).  While the implication is clear that he very likely would not have allowed Bloomfield to return and sign the release form, Whirlpool did not know this when it made the decision to terminate Bloomfield.  Dr. Burke testified he did not speak to Dr. Leslie, Dye, or anyone else at Whirlpool after sending the letter notifying Whirlpool of Bloomfield's conduct.  (Id. at 59).

supported motion for summary judgment); *Contract Design Group, Inc. v. Wayne State Univ.*, No. 10−14702, 2013 WL 2199957, at *7 (E.D. Mich. May 20, 2013) (granting defendant summary judgment where plaintiffs abandoned a claim asserted in their complaint).

### III. RELIGIOUS DISCRIMINATION AND HARASSMENT

In her complaint, Bloomfield alleges Whirlpool violated Ohio law by discriminating against and harassing her on the basis of her religion. Whirlpool asserts it is entitled to summary judgment on this claim because Bloomfield has not identified any "evidence that she was degraded or insulted because of her religion . . . ." (Doc. No. 24 at 23). Bloomfield did not move for summary judgment on this count, but argues in opposition to Whirlpool's motion there is a dispute of fact as to whether her religious beliefs were a motivating factor in her termination, as Whirlpool "used Plaintiff's Biblical references to support withholding Plaintiff's job and justifying the IME." (Doc. No. 38 at 23). Whirlpool argues I should not consider this argument because Bloomfield did not advance it in her complaint, and even if I consider her claim, Whirlpool still is entitled to summary judgment because Bloomfield cannot establish a prima facie case. (Doc. No. 42 at 19).

While Bloomfield asserts Whirlpool violated her rights because of or through hostility to her religious beliefs, it is not clear what legal claim she seeks to present. Her complaint alleges religious discrimination and disparate treatment in violation of Ohio law. (Doc. No. 1 at 7) (Whirlpool "did nothing to prevent the harassment" and "similarly situated non-religious employees were either not harassed, or their complaints of harassment were investigated."). In her deposition testimony, Bloomfield asserted she had been repeatedly harassed at work on the basis of her religion, but did not discuss discrimination. (Doc. No. 39 at 169−76). Thus, Bloomfield's more recent characterization appears to be a claim that the alleged harassment created a hostile work environment. Under either characterization, however, Bloomfield fails to establish evidence on which a reasonable jury could find in her favor, and Whirlpool is entitled to summary judgment on her religious discrimination and harassment claim.

13

### A. RELIGIOUS DISCRIMINATION

To assert a successful claim of religious discrimination under Title VII,[5] Bloomfield must either present direct evidence of discrimination or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) she was a member of a protected class, (2) she experienced an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a person outside of the protected class or treated differently than similarly situated employees. *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007); *see also Reed v. Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am.*, 569 F.3d 576, 584 (6th Cir. 2009) (McKeague, J., dissenting) (noting Title VII "also provides the basis for religious disparate treatment claims"). Bloomfield cannot establish a prima facie case of religious discrimination because, at the very least, she does not assert she was replaced by a person outside of the protected class or identify any evidence of a similarly-situated employee who was treated more favorably. *Tepper*, 505 F.3d at 517. Consequently, Whirlpool is entitled to summary judgment on this claim.

### B. HOSTILE WORK ENVIRONMENT

In order to establish a prima facie case of a hostile work environment as a result of religious harassment, Bloomfield must show: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on religion; (4) the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) Whirlpool is liable. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). The environment must be one "a reasonable person would find hostile or abusive and . . . the plaintiff in fact [must] perceive [it] to be so." *Id.* This is determined in light of all of the circumstances of the workplace, including the frequency and severity of the conduct, whether the conduct was "physically threatening or humiliating, or a mere offensive utterance," and whether the

---

[5] Federal case law interpreting Title VII is generally applicable to cases, such as Bloomfield's, involving allegations of violations of O.R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).

14

conduct "unreasonable interferes with an employee's work performance." *Id.* (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Whirlpool argues there is no evidence linking the repeated clashes between Bloomfield and Bower to religion and notes that during her deposition, Bloomfield identified only one instance in which Bower referred to Bloomfield's religion. (*See* Doc. No. 39 at 175) (testifying she believed Bower harassed her on account of her religious beliefs because Bower told Bloomfield "[Bower] was tired of me using God as an excuse"). Bloomfield does not respond to this argument and in effect concedes Bower's statement does not rise to the level of actionable harassment.

Whirlpool further argues Osting's investigations of and subsequent impositions of discipline due to reports regarding Bloomfield's behavior, as well as "the simple fact that Osting told Bloomfield on one occasion that she did not wish to discuss religion," do not constitute religious harassment. (Doc. No. 24 at 22–23). Bloomfield claims Osting "instructed [her] to stop using religious references" and "suggested [she] could be disciplined if she continued making religious references." (Doc. No. 38 at 23). She continues "Dye used [her] Biblical references to support withholding [her] job and justifying the IME.[6] . . . Clearly, a dispute of fact exists as to whether [her] religious beliefs were a factor in the adverse employment actions taken against her." (Id.).

Osting's statement to Bloomfield came shortly after the conversation between the two during which Osting believed Bloomfield threatened her and her unborn child. Even if I assume the inference Osting drew from Bloomfield's statements was incorrect, Osting's directive is not sufficient evidence to support an inference that the work environment reasonably could be perceived as hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). Bloomfield does not identify any evidence to support an inference that Osting was threatening or degrading, humiliated her, or unreasonably interfered with her work performance. *Id.* at 23. Moreover,

---

[6] As Whirlpool notes, Bloomfield did not advance what appears to be a religious retaliation claim in her complaint, and it is improper to raise a new claim for the first time in opposition to a motion for summary judgment. *Tucker v. Union of Needletrades, Indus. and Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005)

15

Bloomfield does not present evidence that Osting's comments regarding Bloomfield's religious statements were more than an isolated incident. A jury could not reasonably conclude Osting's conduct was sufficiently severe to create an objectively hostile or abusive work environment. *See, e.g., Hafford*, 183 F.3d at 514; *Goldsmith v. City of Canton*, 47 F.3d 1168, at *1 (6th Cir. 1995) (unpublished table decision). Whirlpool is entitled to summary judgment on this claim.

## IV. TITLE VII RETALIATION

In her motion for summary judgment, Bloomfield argues "terminating [her] for refusing to submit to the unlawful IME, if she really refused, constitutes unlawful retaliation," and seeks summary judgment "on the issue of [Whirlpool's] liability for ADA . . . retaliation." (Doc. No. 28 at 2; *see also* id. at 15 ("terminating [Bloomfield] for refusing to cooperate with a medical inquiry that violates the ADA clearly constitutes unlawful retaliation")). There are two problems with this argument. First, in her complaint, Bloomfield asserts Whirlpool "intentionally retaliated against her in violation of Title VII . . . ." (Doc. No. 1 at 8). She did not allege a claim of ADA retaliation, and she may not allege this claim for the first time in her motion for summary judgment. *Tucker v. Union of Needletrades, Indus. and Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) ("At the summary judgment stage, the proper procedure for plaintiffs [seeking] to assert a new claim is to amend the complaint in accordance with Rule 15(a).") (*quoting* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2723 (3d ed. Supp. 2005)).

Second, Bloomfield offers only her conclusory assertions that Whirlpool's conduct violated the ADA's prohibition on retaliation and fails to offer any legal citations or analysis in support of her claim. Such token arguments are considered waived. *Barany-Snyder v. Weiner*, 539 F.3d 327, 331 (6th Cir. 2008) ("[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (alteration in original) (*quoting McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). Bloomfield does not discuss her Title VII retaliation claim in her

16

motion for summary judgment, though she does address it in her brief in opposition to Whirlpool's summary judgment motion.

Title VII in part prohibits retaliation against an individual who files a charge of disability discrimination. 42 U.S.C. § 12203(a). In order to establish a prima facie case of retaliation in violation of Title VII, Bloomfield must demonstrate she engaged in a protected activity, Whirlpool subsequently took an adverse employment action, and there was a causal connection between the protected activity and the adverse employment action. *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 412 (6th Cir. 1999); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000). If Bloomfield does so, Whirlpool must set forth a legitimate, nonretaliatory reason for the adverse employment action taken. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996). If Whirlpool carries its burden of production, Bloomfield then must show Whirlpool's "proffered reasons were not its true reasons, but were merely a pretext for illegal [retaliation]." *Id.* (*citing Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). Bloomfield may identify a genuine issue of material fact on the validity of Whirlpool's explanation for its adverse employment action by showing "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." *Kocsis*, 97 F.3d at 883 (*citing Manzer*, 29 F.3d at 1083).

Whirlpool implicitly concedes Bloomfield can prove the first two elements of her prima facie case, as Bloomfield filed an EEOC charge and subsequently was terminated. Whirlpool contends (1) Bloomfield cannot rely on temporal proximity as proof of causation because the four month gap between filing of the EEOC charge and termination does not imply causation and (2) Bloomfield's refusal to cooperate with Dr. Burke during the IME constitutes an intervening legitimate reason that undermines an inference of retaliation based on temporal proximity. (Doc. No. 24 at 24). Bloomfield argues there is a dispute of fact as to "whether [her] EEOC charge . . . factored into [Whirlpool's] decision to terminate her." (Doc. No. 38 at 24).

17

Following completion of briefing on the parties' summary judgment motions, the Supreme Court decided *Univ. of Texas Sw. Med. Ctr. v. Nassar*, --- U.S. ---, 133 S. Ct. 2517 (2013). After I granted leave, the parties filed supplemental briefing on the impact of *Nassar* on Bloomfield's retaliation claim. (Doc. No. 45, 47-48). In *Nassar*, the Court "define[d] the proper standard of causation for Title VII retaliation claims." *Nassar*, 133 S. Ct. at 2524. In 1991, Congress amended the Civil Rights Act, in part by adding a new subsection, § 2000e-2(m). This provision states "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

Justice Kennedy, writing for the majority, noted Title VII defines the term "unlawful employment practice" as discrimination on the basis of seven criteria. *Nassar,* 133 S. Ct. at 2525 (*citing* 42 U.S.C. § 2000e-2 (race, color, religion, sex, and national origin) and 42 U.S.C. § 2000e-3 (opposition to employment discrimination, and submission of or support for complaint alleging employment discrimination)). Justice Kennedy distinguished between the first five characteristics – which he referred to as "status-based" discrimination – and the remaining two unnamed but apparently conduct-based characteristics. *Nassar*, 133 S. Ct. at 2525. He reasoned that by placing the "motivating factor" causation standard in § 2000e-2 only, Congress intended to alter "the standard of causation for one class of claims but not another, despite the obvious opportunity to do so in the [Civil Rights Act of 1991]." *Id.* at 2531. The Court concluded "[t]he text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must establish . . . her protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 2534.

Bloomfield does not identify any evidence that would permit a reasonable jury to conclude her filing of an EEOC charge was the but-for cause of her termination. Instead, she states the sole reason for her termination was her alleged refusal "to cooperate with [Whirlpool's] forced medical

18

inquiry." (Doc. No. 47 at 1). While Bloomfield claims the IME "was part of a pattern of retaliation for her having previously filed discrimination complaints," the IME itself is not unlawful and so it does not satisfy the adverse-employment-action prong of her prima facie case. (Id. at 2). Rule 56, read in concert with *Nassar*, requires Bloomfield to identify a genuine dispute of material fact as to whether Whirlpool fired her because she filed an EEOC charge. She instead argues Whirlpool terminated her in violation of the ADA for noncooperation with the IME. (Id.) Bloomfield fails to present evidence in support of a material element of her claim and Whirlpool is entitled to summary judgment. *See Nicholson v. City of Clarksville*, --- F. App'x ---, 2013 WL 3746098, at *13 (6th Cir. July 17, 2013) (affirming summary judgment on plaintiff's Title VII retaliation claim because plaintiff failed to produce evidence of but-for causation) (*citing Nassar*, 133 S. Ct. at 2533).

## Conclusion

For the reasons stated above, Bloomfield's motion for partial summary judgment, (Doc. No. 27), is denied, and Whirlpool's motion for summary judgment, (Doc. No. 23), is granted in part and denied in part. Whirlpool is entitled to summary judgment on Bloomfield's claims for sex discrimination, religious discrimination and harassment, and Title VII retaliation. Neither party is entitled to summary judgment on Bloomfield's federal and state law disability discrimination claims because there remains a genuine dispute of material fact as to whether Bloomfield's termination was the result of unlawful disability discrimination.

So Ordered.

<div style="text-align:right">

s/ Jeffrey J. Helmick
United States District Judge

</div>